UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

ROSA MARQUEZ; an individual; on behalf of herself and all others similarly situated,

                            Plaintiffs,

                 vs.

MIDLAND CREDIT MANAGEMENT, INC., a Kansas Corporation; MIDLAND FUNDING, LLC, a Delaware Limited Liability Company; and, JOHN AND JANE DOES NUMBERS 1 THROUGH 25,

                            Defendants.

---------------------------------------------------------------x

CASE NO.:

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

**DEMAND FOR JURY TRIAL**

## I.  PRELIMINARY STATEMENT

1.    Plaintiff, ROSA MARQUEZ ("Plaintiff" or "MARQUEZ"), on behalf of herself and all others similarly situated, and demanding a trial by jury, brings this action for the illegal practices of the Defendants MIDLAND CREDIT MANAGEMENT, INC. ("MCM") and MIDLAND FUNDING, LLC ("MIDLAND FUNDING") (collectively referred to hereinafter as "Defendants") who, *inter alia*, used false, deceptive, misleading, unconscionable, and other illegal practices, in connection with their attempts to collect an alleged debt from the Plaintiff and others.

2.    The Plaintiff alleges that the Defendants' collection practices violate the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA").

3.    The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal

bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

4. The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. The Second Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

5. To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. §§ 1692e(1)-(16). Among these *per se* violations prohibited by that section are: false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. §1692e(2)(A); the threat to take any action that cannot legally be taken or that is not intended to be taken the failure by debt collectors, 15 U.S.C. § 1692e(5); and the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10).

6. To prohibit unconscionable and unfair practices, the FDCPA at 15 U.S.C. § 1692f, outlaws the use of unfair or unconscionable means to collect or attempt to collect any debt and names a non-exhaustive list of certain *per se* violations of unconscionable and unfair collection conduct. 15 U.S.C. §§ 1692f(1)-(8). Among these *per se* violations prohibited by that section are: the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly permitted by law, 15

U.S.C. § 1692f(1).

7. The Plaintiff, on behalf of herself and all others similarly situated, seeks statutory damages, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court, pursuant to the FCDPA and all other common law or statutory regimes. The Plaintiff, on behalf of herself and all others similarly situated, requests that she and the class members be awarded statutory, common law, punitive, and/or actual damages payable by the Defendants.

## II. PARTIES

8. MARQUEZ is a natural person.

9. At all times relevant to this complaint, MARQUEZ resided in the City of New York, Borough of Brooklyn, Kings County, New York.

10. At all times relevant to this complaint, MCM is a for-profit corporation existing pursuant to the laws of the State of Kansas. MCM maintains its principal business address at 3111 Camino Del Rio North, Suite 1300, City of San Diego, San Diego County, California.

11. At all times relevant to this complaint, MIDLAND FUNDING is a for-profit limited liability company existing pursuant to the laws of the State of Delaware. MIDLAND FUNDING maintains its principal business address at 3111 Camino Del Rio North, Suite 1300, City of San Diego, San Diego County, California.

12. On information and belief, MCM and MIDLAND FUNDING are subsidiaries of Encore Capital Group, Inc., a publicly traded company, whose principal place of business is also located at 3111 Camino Del Rio North, Suite 1300, City of San Diego, San Diego County, California.

13. Plaintiff is informed and believes and, on that basis alleges, that MIDLAND FUNDING and MCM share, *inter alia*, common ownership, equipment, employees, and other

resources.

14. Defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 25, are sued under fictitious names as their true names and capacities are yet unknown to Plaintiff. Plaintiff will amend this complaint by inserting the true names and capacities of these DOE defendants once they are ascertained.

15. The Plaintiff is informed and believes, and on that basis alleges, that Defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 25, are natural persons and/or business entities all of whom reside or are located within the United States who personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with, oversaw, and engaged in the illegal policies and procedures used by employees of MCM and MIDLAND FUNDING that are the subject of this complaint. Those Defendants personally control the illegal acts, policies, and practices utilized by MCM and MIDLAND FUNDING and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint.

### III. JURISDICTION & VENUE

16. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331, 1337.

17. Declaratory relief is available pursuant to under 28 U.S.C. §§ 2201, 2202.

18. Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district, and because each of the Defendants are subject to personal jurisdiction in the State of New York at the time this action is commenced.

### IV. FACTS CONCERNING PLAINTIFF

19. Sometime prior to February 7, 2013, Plaintiff allegedly incurred a financial obligation to T-Mobile ("T-Mobile Obligation").

20. The T-Mobile Obligation arose out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

21. Defendants contend that the T-Mobile Obligation is in default.

22. The alleged T-Mobile Obligation is a "debt" as defined by 15 U.S.C. §1692a(5).

23. Plaintiff is, at all times relevant to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

24. Plaintiff is informed and believes, and on that basis alleges, that sometime prior to February 7, 2013, the creditor of the T-Mobile Obligation either directly or through intermediate transactions sold the debt to MIDLAND FUNDING for collection.

25. MIDLAND FUNDING is a purchaser of non-performing consumer debts, which are in default at the time those debts are acquired.

26. According to its website, MIDLAND FUNDING is one of the nation's biggest buyers of unpaid consumer debt. MIDLAND FUNDING further states on its website that it purchases accounts with an unpaid balance where consumers have gone at least 180 days without making a payment, or paid less than the minimum monthly payment.

27. MIDLAND FUNDING collects, and attempts to collect, debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

28. In connection with its debt collection operations MIDLAND FUNDING outsources its collection activities to its affiliate, MCM, to shield itself from greater liability exposure under various federal and state consumer protection laws, such as the FDCPA.

29. MIDLAND FUNDING is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

30. Plaintiff is informed and believes, and on that basis alleges, that sometime on or near February 7, 2013, MIDLAND FUNDING either directly or through intermediate transactions assigned, placed, or transferred the T-Mobile Obligation to MCM for collection.

31. MCM collects, and attempts to collect, debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

32. MCM is, at all times relevant to this complaint, a "debt collector" as defined by 15 U.S.C. § 1692a(6).

33. On or about February 7, 2013, MCM mailed an initial collection letter concerning the T-Mobile Obligation, which is dated February 7, 2013, and which Plaintiff received in the ordinary course of mail. ("2/7/2013 Letter"). A true and correct copy of the 2/7/2013 Letter is attached hereto as ***Exhibit A***, except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially redacted the financial account numbers in an effort to protect Plaintiff's privacy.

34. The 2/7/2013 Letter was sent, or caused to be sent, by persons employed by Defendants as a "debt collector" as defined by 15 U.S.C. § 1692a(6).

35. The 2/7/2013 Letter was sent to Plaintiff in connection with the collection of a "debt" as defined by 15 U.S.C. § 1692a(5).

36. The 2/7/2013 Letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

37. On information and belief, the 2/7/2013 Letter is a computer-generated form letter that is prepared by the Defendants and sent to consumers, such as Plaintiff, from whom they were attempting to collect a debt.

38. The 2/7/2013 Letter, in the top right-hand corner, states, *inter alia*, "Current Balance $199.55."

39. On the right side of the 2/7/2013 Letter, it includes, *inter alia*, the following statements:

**Benefits of Paying!**

**We will stop applying
interest to your account as
Soon as you make your first
payment**

40. On information and belief, and contrary to statements contained on the 2/7/2013 Letter, the Defendants had not applied "interest" to the T-Mobile Obligation and it had no intention of doing so in the future.

41. On or about March 21, 2013, MCM mailed another collection letter concerning the T-Mobile Obligation, which is dated March 21, 2013, and which Plaintiff received in the ordinary course of mail. ("3/21/2013 Letter"). A true and correct copy of the 3/21/2013 Letter is attached hereto as ***Exhibit B***, except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially redacted the financial account numbers in an effort to protect Plaintiff's privacy.

42. The 3/21/2013 Letter was sent, or caused to be sent, by persons employed by Defendants as a "debt collector" as defined by 15 U.S.C. § 1692a(6).

43. The 2/7/2013 Letter was sent to Plaintiff in connection with the collection of a "debt" as defined by 15 U.S.C. § 1692a(5).

44. The 3/21/2013 Letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

45. On information and belief, the 3/21/2013 Letter is a computer-generated form letter that is prepared by the Defendants and sent to consumers, such as Plaintiff, from whom they were attempting to collect a debt.

46. The 3/21/2013 Letter, in the top right-hand corner, again states, *inter alia*, "Current Balance $199.55."

47. On the right side of the 2/7/2013 Letter, it again includes, *inter alia*, the following statements:

**Benefits of Paying!**

**We will stop applying
interest to your account as
Soon as you make your first
payment**

48. Contrary to statements contained on the 3/21/2013 Letter, the Defendants had not applied "interest" to the T-Mobile Obligation and it had no intention of doing so.

49. On information and belief, contrary to statements contained on the 2/7/2013 Letter and 3/21/2013 Letter, at no time do the Defendants add "interest" to the T-Mobile debts they purchase and attempt to collect from consumers.

50. Defendants' statements on the 2/7/2013 Letter and 3/21/2013 Letter are materially false, deceptive, and misleading in that, *inter alia*, they falsely suggest to consumers that the amount of their respective debts will increase <u>daily</u> due to an undisclosed amount of "interest" that will cause the balance of their alleged debts to vary from day to day.

51. Defendants intended that their materially false statements contained in the 2/7/2013 Letter and 3/21/2013 Letter cause Plaintiff and other consumers confusion about the exact amount of money they allegedly owed.

52. Defendants intended that their materially false and deceptive statements contained in the 2/7/2013 Letter and 3/21/2013 Letter cause Plaintiff and other consumers to incorrectly believe they would benefit financially by immediately sending payment for the amount demanded in Defendants' collection letters rather than waiting to make such payment.

## V.  POLICIES AND PRACTICES COMPLAINED OF

53. It is Defendants' policy and practice to send initial written collection communications, in the form attached as *Exhibits A & B*, that violate the FDCPA by, *inter alia*:

(a) Using false, deceptive, or misleading representations regarding the character, amount, or legal status of alleged debt;

(b) Threatening to take any action that cannot legally be taken or that is not intended to be taken; and

(c) Seeking to collect amounts (including any interest, fee, charge, or expense incidental to the principal obligation) that are not expressly authorized by the agreement creating the debt or permitted by law.

54. On information and belief, Defendants sent a written communication, in the form attached as *Exhibits A & B*, to at least 50 natural persons in the State of New York.

## VI.  CLASS ALLEGATIONS

55. This action is brought as a class action. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

56. With respect to the Plaintiff Class, this claim is brought on behalf of a class of (a) all natural persons in the State of New York (b) to whom Defendants sent a written communication in the form attached as *Exhibits A & B* (c) that was not returned as undeliverable (d) in connection with Defendants' attempt to collect a debt described as a T-Mobile account purchased by Midland Funding, LLC (e) which written communications violate the FDCPA (f) during a period beginning one year prior to the filing of this initial action and ending 21 days after the filing of this Complaint.

57. The identities of all class members are readily ascertainable from the records of Defendants, Encore Capital Group, Inc., and T-Mobile.

58. Excluded from the Plaintiff Class are the Defendants and all officers, members, partners, managers, directors, and employees of the Defendants and their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

59. There are questions of law and fact common to the Plaintiff Class, which common issues predominate over any issues involving only individual class members. The principal issues are whether the Defendants' written communications, in the form attached as ***Exhibits A & B***, violate 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, and 1692f(1).

60. The Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

61. The Plaintiff will fairly and adequately protect the interests of the Plaintiff Class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests, which might cause them not to vigorously pursue this action.

62. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

   (a) **Numerosity:** The Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff Class defined above are so numerous that joinder of all members would be impractical.

   (b) **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Plaintiff Class and those questions predominate over any

questions or issues involving only individual class members. The principal issues are whether the Defendants' written communications, in the form attached as ***Exhibits A & B***, violate 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, and 1692f(1).

(c) **Typicality:** The Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of the Plaintiff Class have claims arising out of the Defendants' common uniform course of conduct complained of herein.

(d) **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor her counsel has any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

(e) **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

63. Certification of a class under Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure is appropriate because adjudications with respect to individual members create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for Defendants, which collect debts throughout the United States of America.

64. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that a determination that Defendants' letters, which are attached hereto as ***Exhibits A & B***, violate 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, or 1692f(1), is tantamount to declaratory relief and any monetary relief under the FDCPA would be merely incidental to that determination.

65. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

66. Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to modify the class definition and/or certify a class only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

## VII. FIRST CAUSE OF ACTION
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST ALL DEFENDANTS)

67. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

68. Defendants violated the FDCPA. Defendants' violations with respect to their written communications, in the form attached as ***Exhibits A & B***, include, but are not limited to, the following:

(a) Using false, deceptive, and misleading representations or means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e;

(b) Making false, deceptive, and misleading representations regarding the character, amount, or legal status of any debt in violation of 15 U.S.C. § 1692e(2)(A);

(c) Making false threats to take any action that cannot legally be taken or that is not intended to be taken in violation of 15 U.S.C. § 1692e(5);

(d) Using false representations and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10);

(e) Using an unfair or unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f; and

(f) Seeking to collect amounts (including any interest, fee, charge, or expense incidental to the principal obligation) that are not expressly authorized by the agreement creating the debt or permitted by law in violation of 15 U.S.C. § 1692f(1).

## IX. PRAYER FOR RELIEF

69. WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and in favor of the Plaintiff Class as follows:

A. **For the FIRST CAUSE OF ACTION**:

(i) An order certifying that the First Cause of Action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing MARQUEZ and the undersigned counsel to represent the Plaintiff Class as previously set forth and defined above.

(ii) An award of the maximum statutory damages for MARQUEZ and the Plaintiff Class pursuant to 15 U.S.C. § 1692k(a)(2)(B);

(iii) For declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202 adjudging Defendants' written collection communications, in the form attached hereto as ***Exhibits A & B***, violate the FDCPA;

  (iv)  Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

  (v)  For such other and further relief as may be just and proper.

## X. JURY DEMAND

Plaintiff hereby demands that this case be tried before a Jury.

DATED:  Fresh Meadows, New York
      May 13, 2013

                *s/ William F. Horn*
                Shimshon Wexler, Esq.
                THE LAW OFFICES OF SHIMSHON WEXLER, P.C.
                P.O. Box 250870
                New York, New York 10025
                Telephone: (212) 760-2400
                Facsimile: (917) 512-6132
                E-Mail: shimshonwexler@yahoo.com

                William F. Horn, Esq. (WH-1070)
                LAW OFFICE OF WILLIAM F. HORN
                188-01B 71st Crescent
                Fresh Meadows, NY 11365
                Telephone: (718) 785-0543
                Facsimile: (866) 596-9003
                E-Mail: bill@wfhlegal.com

                *Attorneys for Plaintiff, Rosa Marquez, and all others similarly situated*

# EXHIBIT "A"

Return Mail Only - No Correspondence
**mcm** PO Box 603
Oaks, PA 19456

MCM Account Number
854846
Original Creditor
**T-MOBILE**
CURRENT BALANCE
**$199.55**

02-07-2013

#BWNHLTH
#0000 0854 8468
ROSA MARQUEZ
775 DREW ST APT 2
BROOKLYN, NY 11208-4703

You are pre-approved for a 50% discount call now: (800) 282-2644.

## Choose The Option That Works For You.

Dear ROSA,

Midland Credit Management, Inc., understands a one-size payment plan doesn't fit everyone's needs. Special offers are now available to help you resolve your unpaid T-MOBILE account. Select one of the three options below and get closer to having one less thing to worry about.



Option 1 - 50% OFF
Payment Due Date: 03-09-2013

You Pay Only
**$99.78**



Option 2 - 10% OFF
1st Payment Due Date: 03-09-2013

3 Monthly Payments of Only
**$59.86**



Option 3 - To hear more options, call one of our Account Managers.

### Benefits of Paying!

We will stop applying interest to your account as soon as you make your first payment.

Your credit report will be updated with each payment made, and once you've completed your agreed-upon amounts to settle the account, your credit report will be updated as 'Paid in Full'.

Save up to $99.77 if you choose Option 1

Offer expiration date:
03-09-2013

**CALL US TODAY!**
**(800) 282-2644**

Hours of Operation:
M-Th 6am - 7pm; Fri 6am - 5pm
Sat 6am - Noon Pacific Time

Sincerely,

Hector Torres, Division Manager

PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION

CALL
(800) 282-2644

Click
www.midlandcreditonline.com

Mail:
Payment coupon below

*Please tear off and return lower portion with payment in the envelope provided*

## PAYMENT COUPON

MCM Account No.: 854846
Original Account No.: 51229
Current Balance: $199.55

Payment Due Date: 03-09-2013

Amount Enclosed: _____

Payment Options:
1) Mail in this coupon with your payment
2) Pay by phone (800) 282-2644

Make Check Payable to:
Midland Credit Management, Inc.

**mcm** Midland Credit Management, Inc.
P.O. Box 60578
Los Angeles, CA 90060-0578

12 8548468813 1 0009978 03

A614 - 3945 - PMP2 - 4010

# EXHIBIT "B"

Return Mail Only - No Correspondence
**mcm**
Dept. 12421
PO Box 603
Oaks, PA 19456

| MCM Account Number |
|---|
| 85484■ |
| **Original Creditor** |
| T-MOBILE |
| **CURRENT BALANCE** |
| $199.55 |

You are **pre-approved** for a 40% discount call now: (800) 282-2644.

03-21-2013

#BWNHLTH
#0000 0854 8468
ROSA MARQUEZ
775 DREW ST APT 2
BROOKLYN, NY 11208-4703

3945 - 10300

## Choose The Option That Works For You.

Dear ROSA,

Midland Credit Management, Inc., understands a one-size payment plan doesn't fit everyone's needs. Special offers are now available to help you resolve your unpaid T-MOBILE account. Select one of the three options below and get closer to having one less thing to worry about.

**Option 1: 40% OFF**
Payment Due Date: 04-20-2013
You Pay Only
**$119.73**

**Option 2: 10% OFF**
First Payment Due Date: 04-20-2013
3 Monthly Payments of Only
**$59.86**

**Option 3: To hear more options, call one of our Account Managers.**

Sincerely,

*N In*

Hector Torres, Division Manager

### Benefits of Paying!

- We will stop applying interest to your account as soon as you make your first payment.
- After receiving your final payment, we will consider the account PAID IN FULL and the three major credit reporting agencies will be updated accordingly.
- Save up to $79.82 if you choose Option 1
- Offer expiration date: 04-20-2013

**CALL US TODAY!**

**(800) 282-2644**

Hours of Operation:
M-Th 6am - 7pm; Fri 6am - 5pm
Sat 6am - Noon Pacific Time

PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION

CALL        Click        Mail: